IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Joe Hand Promotions, Inc., | ) | |
|---|---|---|
| | ) | C/A No.: 4:11-2020-TLW-KDW |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND RECOMMENDATION |
| | ) | |
| P & B Enterprises of Florence, Inc. d/b/a | ) | |
| Spin a/k/a Spin Entertainment Complex, | ) | |
| Jerry Preston Grantham, Jr., Connee G. | ) | |
| Grantham and Britt John Campama, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff"), which had exclusive, nationwide commercial television distribution rights to *Ultimate Fighting Championship 101: "Declaration,"* ("the Program"), sued P & B Enterprises of Florence, Inc. d/b/a Spin a/k/a Spin Entertainment Complex ("P & B"), Jerry Preston Grantham, Jr. ("J. Grantham"), Connee G. Grantham ("C. Grantham"), and Britt John Campama ("Campama") (collectively "Defendants") for exhibiting the August 9, 2009, commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to Plaintiff. Plaintiff's Complaint includes causes of action brought pursuant to 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state law claim for conversion. Compl., ECF No. 1. Although Defendants were served with the Complaint, they have not answered or filed any responsive pleading. Pursuant to Plaintiff's request, the Clerk of Court entered default against Defendants, and Plaintiff then filed this motion for default judgment and award of attorneys' fees and other costs. ECF No. 9. On January 1, 2012, all pretrial proceedings in

this case were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) D.S.C. ECF No. 12. Because this motion is dispositive, the undersigned submits this Report and Recommendation ("Report") for the court's consideration.

I. Introduction

Plaintiff filed this action against Defendants on August 2, 2011, seeking an award of statutory damages, enhanced damages, attorneys' fees and costs, as well as compensatory and punitive damages based on the unlicensed broadcast of the Program. ECF No. 1.

A. Jurisdiction and Venue

The court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367. The court has personal jurisdiction over Defendants, and venue in this district is proper pursuant to 28 U.S.C. § 1391 because J. Grantham, C. Grantham, and Campama are South Carolina residents and P & B is a South Carolina corporation, which conducts, or conducted, business in this district, and because the alleged wrongful acts occurred in this district.

B. Process and Service

On August 5, 2011, Plaintiff's private process server served C. Grantham personally; on August 8, 2011, Plaintiff's private process server served Campama personally; and on September 14, 2011, Plaintiff's private process server served P & B, by personally serving Plaintiff's agent, and served J. Grantham personally. *See* ECF Nos. 5, 5-1, 5-2, 5-3, 5-4.

C. Grounds for Entry of Default

None of the Defendants timely filed an answer or other pleading, as reflected by the Affidavit of Default and the Affidavit of Plaintiff's Counsel in Support of Request for Entry

of Default filed on October 12, 2011. ECF Nos. 6, 6-1, 6-2, 6-3. The Clerk of Court properly entered default as to Defendants on October 13, 2011. ECF No. 7. On October 26, 2011, Plaintiff filed a Notice of Motion and Motion for Default Judgment, which it served upon Defendants by mail. ECF No. 9-8. None of the Defendants, nor anyone on their behalf, has filed any response to Plaintiff's motion for default judgment.

II. Findings of Fact

Having reviewed Plaintiff's Complaint, Answers to Local Rule 26.01 Interrogatories, Request for Entry of Default, Motion for Default Judgment, as well as all supporting and supplemental information provided, the court accepts Plaintiff's well-pleaded factual allegations as true and makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting defendant "'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001)).

Plaintiff is a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania. P & B Enterprises of Florence, Inc., is a corporation organized under the laws of the State of South Carolina and doing business in the County of Florence as Spin a/k/a Spin Entertainment Complex at 1617-B West Lucas Street, Florence, South Carolina, 29501; J. Grantham, C. Grantham, and Campama are citizens and residents of the County of Florence and/or the County of Darlington, State of South Carolina. ECF No. 1 ¶¶ 5-8.

Relevant to this litigation, Plaintiff paid for, and was granted, the exclusive nationwide commercial television distribution rights to the Program. Plaintiff contracted with and granted certain businesses the rights to exhibit publicly the Program to its customers within their commercial establishments. Plaintiff expended substantial money in marketing, advertising, administering and transmitting the Program to such businesses. *Id.* ¶¶ 12-14.

III. Analysis

Having found the facts set forth in Plaintiff's Complaint as deemed admitted by default, the court must ensure the Complaint sets forth a proper claim before entering default judgment. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating plaintiff's claims prior to entry of default judgment in copyright action). The court considers whether Plaintiff has set forth claims for which relief can be granted pursuant to the standard of Federal Rule of Civil Procedure 12(b)(6).

### A. Election of Remedies

In its Motion for Default Judgment and accompanying Memorandum, Plaintiff submits that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553, and because the two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable), Plaintiff has elected to proceed under 47 U.S.C. § 605. ECF No. 9-1 at 3.

In electing to pursue damages pursuant to 47 U.S.C. § 605, Plaintiff concedes the split in authority as to the applicability of this section to pirated programming involving cable services—as opposed to satellite services—at the delivery point, and it submits that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether

the Program was broadcast by cable or satellite signal. The court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable; however, given the default, Plaintiff cannot conduct discovery to determine the mode of transmission.

A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 with a $100,000 maximum enhancement for willfulness, while statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations with a $50,000 maximum enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii) and 553(c)(3)(B). In any event, in light of the damages awarded herein, the distinction is without a difference. *See Columbia Cable TV Co., Inc. v. McCrary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (noting that, even if 47 U.S.C. § 605 were applicable to cable theft, under facts of case, court would award damages "as close as permissible to the amount awarded under § 553").

In its Motion for Default Judgment, Plaintiff seeks damages under both 47 U.S.C. § 605 and its common law claim for conversion. Plaintiff has elected to pursue damages permitted under 47 U.S.C. § 605 and not to pursue its conversion claim. As such, the remainder of this Report focuses only on Plaintiff's claim and damages pursued under 47 U.S.C. § 605.

B. Liability under 47 U.S.C. § 605

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. *See* 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

> . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall

5

> divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent or attorney. . . .

47 U.S.C. § 605(a). In short, Plaintiff must demonstrate that Defendants intercepted the Program's signals and "divulged" or aired it to commercial patrons.

Plaintiff submitted its required proof through an affidavit of a private investigator who viewed the Program at the Spin Entertainment Complex. ECF No. 8-4. This affidavit provides evidence that the Program was displayed on four televisions at the Spin Entertainment Complex and provides details of the portion of the Program he watched. *Id.* at 1. Plaintiff having established that Defendants violated 47 U.S.C. § 605(a), the court finds and concludes that judgment should be entered in Plaintiff's favor against Defendants.

### C. Damages under 47 U.S.C. § 605

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a private civil action, as follows:

> (B) The court--
>
> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Plaintiff seeks damages, attorneys' fees and costs.

#### i. Statutory Damages under 47 U.S.C. § 605

The statute sets out the following available damages:

> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
>
> (iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. § 605(e)(3)(C).

Plaintiff elects to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). ECF No. 9-1 at 7. As Plaintiff points out, statutory damages are difficult to prove. Because of Defendants' default, Plaintiff has not been able to conduct discovery concerning, among other things, Defendants' profits from the broadcast of the Program. Plaintiff seeks $10,000 in statutory damages, which is the maximum available pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and it argues for the maximum recoverable statutory damages to compensate Plaintiff for its damages and for the deterrent effect it may have in minimizing such future conduct.

According to the private investigator's affidavit, the Spin Entertainment Complex has the capacity for approximately 60 people, and there were 24 present during the Program.

ECF No. 9-4 at 3. According to Plaintiff's Affidavit in Support of Motion for Default Judgment, the licensing fee for Defendants to have legally shown the Program would have been $1,100.00 (rate card showing cost of licensing as $1,100.00 for establishments with a maximum capacity of 60). ECF No. 9-3 at 9.

The court may award statutory damages between $1,000 to $10,000 in an amount "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost of the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. *See Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd.*, 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010). The Fourth Circuit has not addressed any of these methods.

The court concludes that statutory damages in the amount of $5,500.00 should be granted. Under the facts and circumstances here, the court concludes that an award of five times the license fee Defendants should have paid to legally broadcast the Program, when combined with enhanced damages and attorneys' fees, discussed below, is a fair reflection of actual damages.

    ii. Enhancement of Statutory Damages under 47 U.S.C. § 605

Plaintiff claims that Defendants willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $100,000, asserting that Defendants intentionally intercepted and showed the Program for financial gain or commercial advantage and that C.

Grantham, J. Grantham, and Campama directly or indirectly committed wrongful acts and cannot hide behind a corporate shield. ECF No. 9-1 at 5, *see* ECF No. 1. The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when the violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). In addition to Plaintiff's pleadings regarding Defendants' intentional acts, Plaintiff, by the Plaintiff's Affidavit in Support of Plaintiff's Motion for Default Judgment, asserted that the Program could not have been "mistakenly, innocently or accidentally intercepted." ECF No. 9-3 ¶ 9.

Although the court finds that Defendants' violations were intentional and willful and agrees that more than nominal damages should be awarded to deter future violations, the court does not approve the maximum of statutory enhanced damages, and it concludes that enhanced damages in the amount of $16,500.00 (in addition to the $5,500.00 award discussed above and the award of attorneys' fees and costs discussed below) should be granted. This recommended enhanced damages amounts represents a sum equal to three times the recommended statutory damages, which the undersigned finds appropriate in this matter.

Thus, the undersigned recommends Plaintiff be awarded statutory and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C) in the aggregate amount of $22,000.00 ($5,500.00 plus $16,500.00).

### iii. Attorneys' Fees and Costs under 47 U.S.C. § 605

The Communications Act requires that the court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. §

605(e)(3)(B)(iii). As the rightful owner of the Program broadcast rights, Plaintiff is an aggrieved party that has prevailed.

In support of its request for costs, Plaintiff submitted affidavits of its South Carolina counsel and its California counsel. ECF Nos. 9-6, 9-7. Through counsels' affidavits, Plaintiff seeks recovery of the statutory filing fee ($350.00), service-of-process fees ($533.00), investigative costs ($505.00), postage charges ($18.38), and photocopying charges ($9.57). ECF Nos. 9-6 ¶ 5 & pp. 4-5, 9-7 ¶¶ 2-5.

The undersigned is not aware of cases in the Fourth Circuit or courts in this district that have discussed what "full costs" are to be awarded a prevailing party pursuant to 47 U.S.C. § 605(e). In *Kingsvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59 (E.D.N.Y. 2006), the court considered the legislative history and determined that "full costs" included more than those costs taxable under 28 U.S.C. § 1920, the general statute setting out limited taxable costs. *See id.* at 65–67.

Based on the legislative history and the statute's mandatory award of "full costs," the undersigned finds it appropriate to award the type of costs requested, so long as these costs are adequately explained and supported. Award of the $350.00 statutory filing fee, the $533.00 service-of-process fees, and the $18.38 in postage costs is appropriate in this matter. Plaintiff has provided sufficient documentation and explanation of these requested costs and the undersigned recommends they be awarded.

Regarding the requested investigative fees, the undersigned finds that they may be awarded pursuant to 47 U.S.C. § 605(e). *See Autar*, 426 F. Supp. 2d at 65-67. However, Plaintiff has not provided adequate support for the full amounts of this portion of its request.

On this record, the undersigned cannot recommend award of the $505.00 Plaintiff seeks in investigative costs. The *Autar* court specifically found investigative costs could be recovered under 47 U.S.C. § 605(e). 426 F. Supp. 2d at 67 (noting Senate Committee's intent that full costs include "reasonable investigative fees (related to the action brought) of an aggrieved party.") (internal quotation and citation omitted)). However, that court also found it was not required to award such fees and that an award requires the prevailing party to appropriately show that the fees sought were reasonable (i.e., the investigator's billing rate, time, and qualifications). *Id.* Plaintiff having failed to so document the investigator fees, the *Autar* court denied the same. *Id.* at 67–68.

In this case, Plaintiff has provided no detail regarding the investigative fees sought ($505.00 for pre-suit investigation). The undersigned concurs with the *Autar* court that fees for necessary investigative services may be awarded, but that the fees must be supported with specific information about the time the investigator spent on the matter, his hourly rate, and his qualifications to charge such fees. Without this supporting information, the undersigned is constrained to recommend denial of this portion of Plaintiff's request for costs. Should Plaintiff provide sufficient detail in any objections to this Report, the district court may choose to consider that detail and make its independent determination regarding whether investigative costs should be included in any default judgment.

In sum, the undersigned recommends $901.38 be awarded in costs as follows: $350.00 filing fee; $18.38 for postage; $533.00 for service of process.

The "full costs" to be awarded to a prevailing party pursuant to 47 U.S.C. § 605(e) includes "reasonable attorneys' fees." In support of its request for attorneys' fees, Plaintiff submits the following: Declaration of Plaintiff's Counsel Regarding Attorneys' Fees and

Costs (ECF No. 9-7) in which Plaintiff's California counsel, Thomas P. Riley, documents that Plaintiff had incurred $307.50 in attorneys' fees from his firm as of October 17, 2011; and the Declaration of Leonard R. Jordan, Jr. Regarding Attorney's Fees and Costs (ECF No. 9-6), in which Plaintiff's South Carolina counsel documents $1,160.00 in attorney's fees from Jordan as of October 26, 2011. In total, Plaintiff seeks a total of $1467.50 in attorneys' fees, comprised of $307.50 charged by Riley and his firm and $1,160.00 charged by Jordan and his firm.

In this default matter, no one has appeared to challenge the fees Plaintiff seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee."

*E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this court's Local Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Rule 54.02(A) (D.S.C.).

With these factors in mind, the court considers the statements of attorneys' fees, beginning with the Riley Declaration, which requests fees for 3.1 hours of work by three professionals—Riley, a paralegal, and an administrative assistant—and sets out the hourly rates for each of them, as follows:

| Timekeeper | Hourly Rate | Amount of Time (Hours) | Amount ($) |
|---|---|---|---|
| Thomas Riley | $400 | .15 | $ 60.00 |
| Admin. Assistant | $75 | 1.9 | $ 142.50 |
| Paralegal | $100 | 1.050 | $ 105.00 |
| Total | | 3.1 | $ 307.50 |

ECF No. 9-7 at 2-4. Riley provides details of the work performed, time for each task, and by whom it was performed. *Id.* ¶ 10. He indicates his firm's expertise in these matters and indicates the billable hours submitted were reconstructed by a thorough review of the case file that is informed by experience in these matters. *Id.* ¶ 9. He indicates the rates charged are "well within the guidelines of the prevailing market rates within Los Angeles County and the United States." *Id.*

Although Riley does not expressly discuss the *Barber* factors, the court finds that his Declaration appropriately addresses some of the same considerations. In light of all information provided and known to the court, the undersigned submits that the 3.1 hours

13

billed and explained in Riley's Declaration are reasonable.[1] In support of Riley's assertion that the rates charged are within guidelines of those charged in "Los Angeles County and the United States," he attaches the "Laffey Matrix," that is used by one of the three federal judicial districts in California. ECF No. 9-7 at 3, 5, n.*i.*, 7-8. However, the undersigned notes that Fourth Circuit law focuses on whether counsel's rate is reasonable in the relevant community in which counsel seeks an award—in this case, the District of South Carolina. *See generally Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing fee award, in part because "Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the [district] of similar skill and for similar work, which our case law required him to do."); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.").

Without support for the requested rates in the relevant market, the court cannot appropriately conduct the required analysis of the reasonableness of hourly rates requested. However, the court may draw on its own knowledge of litigation rates often charged in this district. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.*, 2010 WL 3420189 (finding requested fees to be reasonable based on court's "own knowledge of rates charged in

---

[1] In recommending the time billed by administrative personnel at the Riley firm be included in the fees charged to Defendants, the court is mindful that courts have interpreted other cost-shifting statutes, including 42 U.S.C. § 1988, as not including fees for administrative work. *See generally Missouri v. Jenkins,* 491 U.S. 274, 288 n.10 (1989) (discussing billing of clerical and other tasks under 42 U.S.C. § 1988). The court has found no authority considering the issue under 47 U.S.C. § 605. Given the relatively small amount of the administrative time (1.9 hours at $75/hour for total of $142.50), coupled with the legislative intent that those aggrieved by violations of 47 U.S.C. § 605 be fully compensated, the court will assume, but not decide, that administrative time may be included in a 47 U.S.C. § 605(e) fee award. This assumption is specifically limited to the facts of this case and is not intended to be a precedent-setting ruling.

litigation in this court" for "similar work in this geographic area[,]" while admonishing counsel to comply with the requirements of *Grissom* and *Plyler* in any future fee petitions). In cases similar to this one, the court has found $200/per hour to be an appropriate rate for counsel in this district. *See Joe Hand Promotions, Inc., v. Scott's End Zone, Inc.*, 759 F. Supp. 2d 742, 754 (D.S.C. 2010).

In this case, the court does not have documentation to support a market rate higher than $200/hour, nor does it have independent knowledge of recent higher fees charged in this geographic area for matters similar to this one. Accordingly, the court recommends that the fees requested by Riley be reduced from $400/hour to $200/hour. By the court's calculations, this would reduce the fees requested for work by Riley to be $30.00, reducing the award for fees submitted by the Riley firm to $277.50. In the event that, during the period within which it may file objections to this Report, Riley complies with the *Grissom* and *Plyler* requirements, the district court may wish to award a different amount of fees.

The court now considers the fee applications submitted by Jordan, ECF No. 9-6, in which he details the work he performed, the time spent, and the amount of fees at his customary $200/hour rate. *See* Jordan Decl. ¶ 4 (submitting total 5.8 hours at $200/hour for requested $1,160.00 fee. In support of his request for fees incurred representing Plaintiff in this matter, Jordan also submits an affidavit of Theodore von Keller, Esq. in support of his request for attorney's fees ("von Keller Aff."), ECF No. 9-6 at 6-7. Mr. von Keller indicates that he practices law in this district, has handled matters similar to this one, and has reviewed the fee application Jordan submitted to the court. *Id.* ¶¶ 2, 4. He further indicates that he believes the work performed appropriate in a case of this nature and that, knowing Jordan

and the customary prevailing rates for this type work, he considers the $200/hour rate appropriate. *Id.* ¶¶ 4, 5.

The information Jordan provided, coupled with the court's knowledge of rates in work of this type in this district, supports the $1,160.00 in fees submitted on behalf of Plaintiff.

Based on the information and supporting documents before the court, the undersigned recommends that judgment against Defendants include the award of $1,437.50 ($277.50 plus $1,160.00) in attorneys' fees.

IV. Conclusion

For the reasons set forth above, it is recommended that the court grant Plaintiff's Motion for Default Judgment, ECF No. 9, and find Defendants P & B Enterprises of Florence, Inc. d/b/a Spin a/k/a Spin Entertainment Complex, Jerry Preston Grantham, Jr., Connee G. Grantham, and Britt John Campama, liable to Plaintiff for their willful violation of 47 U.S.C. § 605 and that a judgment in favor of Plaintiff be entered against all Defendants, jointly and severally, in the amount of $22,000.00 in statutory and enhanced damages plus $2,338.88 in attorneys' fees and costs, for a total judgment of $24,338.88.

IT IS SO RECOMMENDED.

April 30, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**